STATE OF MAINE
CUMBERLAND, ss

STATE OF MAINE
CUMBERLAND, SS.
CLERK'S OFFICE

MAR 14  10 57 AM '01

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-99-677
NM- CUM - 3/14/2001

GEE KEUNG CHIU
(a/k/a KENNY CHIU),
by his next friend and father,
SUNG YING CHIU, and his next
friend and mother, SIO TONG CHIU,

       Plaintiff

       vs.

AMY POWERS, in her capacity as
Code Enforcement Officer for the
City of Portland,

TAMMY MUNSON, in her capacity
as Code Enforcement Officer and
Field Supervisor for the City of
Portland,

P. SAMUEL HOFFSES, in his
capacity as Chief of Inspection
Services for the City of Portland,

MARK ADELSON, in his capacity
as Director of Housing and
Neighborhood Services for the
City of Portland, and

THE CITY OF PORTLAND, et al.,

       Defendants

ORDER ON DEFENDANTS
POWERS, MUNSON,
HOFFSES, ADELSON, AND
THE CITY OF PORTLAND'S
MOTION FOR SUMMARY
JUDGMENT

Defendants Powers, Munson, Hoffses, Adelson and the City of Portland move

for a summary judgment on counts IV, V, and VI of the plaintiff's amended

complaint. The defendants argue the following:

1.     defendant Amy Powers had discretionary function immunity under

the Maine Tort Claims Act;

2.     defendant Tammy Munson did not participate in the inspection or failure to reinspect and, even if she did, she had discretionary function immunity;

3.     defendant P. Samuel Hoffses had discretionary function immunity prior to 9/2/97; after that date, he no longer had supervisory responsibility;

4.     defendant Mark Adelson had discretionary function immunity after 9/2/97; prior to that date, he was not involved with the division of inspection services;

5.     defendant City of Portland was immune under the Maine Tort Claims Act;

6.     there is no respondeat superior liability under the Act in the absence of insurance coverage; and

7.     plaintiff has generated no credible evidence with regard to proximate causation.  For the following reasons, the defendants' motion is granted.

Kenny Chiu fell out of a window of his family's third-story apartment at 15 Powsland Street in Portland on 11/25/97.  Prior to 8/21/97, defendant Powers, a code enforcement officer with the City of Portland,  conducted an exterior inspection of the building at 15 Powsland Street.  Following that inspection, a letter signed by defendants Powers and Munson dated 8/21/97, called a notice of housing conditions, was sent to defendant Nancy Davis-Keast.  The letter outlined code violations, including missing screens from windows, which the City did not consider a life safety violation.  The 15 Powsland Street property was not reinspected by the City prior to the accident on 11/25/97.

2

Defendant Munson was the field supervisor of the code enforcement officers. Until 9/2/97, defendant Hoffses was the Chief of the Division of Inspection Services. In September, 1997, defendant Adelson became the supervisor of the Division of Inspection Services for the City of Portland. None of these defendants visited the building at 15 Powsland Street.

Defendant City of Portland was self-insured on 11/25/97.

DEFENDANT POWERS

The plaintiff alleges that defendant Powers negligently inspected and negligently failed to reinspect the building. See Amended Complaint, Counts IV & V. The Maine Tort Claims Act provides governmental employees with immunity for performing discretionary functions. See 14 M.R.S.A. § 8111(1)(C) (Supp. 2000); Adriance v. Town of Standish, 687 A.2d 238, 240-41 (Me. 1996); Webb v. Haas, 665 A.2d 1005, 1009 (Me. 1995). A discretionary act is an act that requires the exercise of "judgment while acting in furtherance of a departmental policy." Trafton v. Devlin, 43 F. Supp. 2d 56, 61 (D. Me. 1999) (quoting Moore v. City of Lewiston, 596 A.2d 612, 616 (Me. 1991)).

The parameters of an inspection of a dwelling are not specified in the Portland Housing Code. See Portland Housing Code, § 6-117. The Code provides that the health or building authority "shall have the right to enter at all reasonable times into or upon any dwelling or dwelling premises within the city for the purposes of inspecting the dwelling or dwelling premises . . . ." Id. If an inspection occurs and a violation is found, the owner shall be given a notice of the violation.

3

Id., § 6-118. The notice "shall contain a reasonable time limit for the correction" of the violation. Id. The Code further provides that

> [a]fter the expiration of the time for correction of a violation, the health or building authority shall make a reinspection of the premises, and if the violation has not been corrected and no appeal is pending as hereinafter provided, such authority may make such further order as he deems advisable or he may proceed to take legal action against the person liable for such violation.

Id., § 6-119. Assuming that a reinspection is mandatory, the reasonable time limit for correction of a violation, the timing of the reinspection, and the consequences for failure to correct a violation are not specified and are left to the discretion of the health or building authority. See Carroll v. City of Portland, 1999 ME 131, ¶¶ 6-9 & nn.4 & 6, 736 A.2d 279, 282-83 nn.4 & 6; see also Casco Northern Bank v. Bd. of Trustees of Van Buren Hospital District, 601 A.2d 1085, 1087 (Me. 1992) (mandamus to compel ministerial act).

No issue of material fact has been raised regarding whether defendant Powers's inspection and failure to reinspect were discretionary functions. See Carroll, 1999 ME 131, ¶ 7, 736 A.2d at 282-83. The conduct challenged by the plaintiff involved the City of Portland's policy to ensure safe living standards for Portland's citizens. See Defs.' SMF, ¶ 92. Inspections and reinspections of dwellings were essential to accomplish that policy. See id., ¶ 93. The challenged conduct required the exercise of basic policy evaluation, judgment, and expertise on defendant Powers's part. See, e.g., Defs.' & Pl.'s SMF, ¶¶ 30, 32, 39-41, 43, 47, 50, 73, 87-89; Defs. Keast & Davis-Keast's SMF, ¶ 89. The Division of Inspection Services had the authority to inspect and reinspect dwellings. See Defs.' SMF, ¶ 94.

4

## DEFENDANT MUNSON

The plaintiff alleges that defendant Munson negligently inspected and negligently failed to reinspect the building.[1] Defendant Munson did not participate directly in the inspection of the building. See Defs.' SMF, ¶ 35. She signed the violation notice sent to defendants Keast and Davis-Keast. See Defs. Keast and Davis-Keast's Add. MF, ¶ 4, Attachment A. A reinspection of the property was the responsibility of the code enforcement officer who did the inspection. See Defs.' SMF, ¶¶ 40-41. To the extent that defendant Munson was required to participate directly, the analysis discussed above with regard to defendant Powers applies to defendant Munson. See Pl.'s SMF, ¶¶ 40-41. Defendant Munson's supervisory duties were discretionary. See Carroll, 1999 ME 131, ¶ 7, 736 A.2d at 282-83; Bowen v. Dep't of Human Services, 606 A.2d 1051, 1055 (Me. 1992).

## DEFENDANTS HOFFSES AND ADELSON

The plaintiff alleges that defendants Hoffses and Adelson negligently failed to supervise and are vicariously liable for the actions of the employees of the Division of Inspection Services based on respondeat superior. Their supervision was a discretionary function. See id. There was no waiver of that immunity. See Rippett v. Bemis, 672 A.2d 82, 88-89 (Me. 1996); Defs.' SMF, ¶¶ 95, 96; Exhibit A attached to Affidavit of Laurie Savona.

---

[1]Plaintiff did not allege that defendant Munson is vicariously liable. See Pl.'s Am. Complaint, Count VI; cf. Pl.'s Mem. at 7.

## DEFENDANT CITY OF PORTLAND

In general, municipalities are immune from suit pursuant to the Maine Tort Claims Act. 14 M.R.S.A. § 8103 (1980); Adriance, 687 A.2d at 240. The City can be held liable on a theory of respondeat superior only if the municipality has purchased insurance to cover areas for which it is otherwise immune. 14 M.R.S.A. § 8116 (Supp. 2000); Comfort v. Town of Pittsfield, 924 F. Supp. 1219, 1237 (D. Me. 1996). Defendant City of Portland has not waived its immunity. See Defs.' SMF, ¶¶ 95, 96; Exhibit A attached to Affidavit of Laurie Savona; Maynard v. Comm'r of Corrections, 681 A.2d 19, 23-24 (Me. 1996); Webb, 665 A.2d at 1011-12.

## PROXIMATE CAUSE

The defendants argue further that there is no evidence that a screen placed on the window would have kept Kenny Chiu from falling out the window and suffering the injuries sustained. The plaintiff has raised an issue of material fact with regard to proximate causation. See Pl.'s SMF, ¶ 77; cf. Defs.' SMF, ¶ 77; Johnson v. Carleton, 2001 ME 12, ¶ 12, 765 A.2d 571, 575.

The entry is

> The Defendants Powers, Munson, Hoffses, Adelson, and City of Portland's Motion for Summary Judgment is GRANTED.
>
> Judgment is entered in favor of Defendants Powers, Munson, Hoffses, Adelson, and The City of Portland and against the Plaintiff on the Plaintiff's Amended Complaint.

Dated: March 14, 2001

Nancy Mills
Justice, Superior Court

GEE KEUNG CHIU
(a/k/a KENNY CHIU),
by his next friend and father,
SUNG YING CHIU, and his next
friend and mother, SIO TONG CHIU,

      Plaintiff

    vs.

NANCY K. DAVIS-KEAST
(f/k/a NANCY K. DAVIS),
MARK KEAST, et al.,

      Defendants

ORDER ON DEFENDANTS
DAVIS-KEAST AND KEAST'S
MOTION FOR SUMMARY
JUDGMENT

On 11/25/97, plaintiff Kenny Chiu fell from a third-story window in his family's apartment in a building owned by defendants Davis-Keast and Keast. The Chius' tenancy began in 1994 and continued on the same terms when the defendants bought the building in 1996. See Defs.' SMF, ¶¶ 1-3. The window from which the plaintiff fell had been broken and repaired prior to the defendants purchase of the building. The window was in the Chius' apartment and not in a common area of the building. Id., ¶ 4.

In count I of the amended complaint, the plaintiff alleges that the defendants Keast and Davis-Keast, as landlords, breached their duty to disclose all latent defects and their duty to exercise reasonable care in the installation, repair and maintenance of the windows. In count II, the plaintiff alleges that the defendants, as landowners, were required to exercise due care to keep the property reasonably safe for persons

legally on the property. In count III, the plaintiff alleges that the defendants breached the statutory warranty of habitability. 14 M.R.S.A. § 6021 (1980 & Supp. 2000). The defendants move for a summary judgment on all three counts. For the following reasons, the motion is granted.

LANDLORD LIABILITY

The plaintiff has no greater rights against the defendants than his parents as tenants. See Sheppard v. Nienow, 173 S.E.2d 343, 345 (S.C. 1970); Shute v. Bills, 78 N.E. 96, 98 (Mass. 1906); see also Lyden v. Winer, 878 P.2d 516, 518 (Wyo. 1994) cited in Rodrigue v. Rodrigue, 1997 ME 99, ¶ 11, 694 A.2d 924, 926; see also Young v. Libby, 1999 ME 139, ¶ 12, 737 A.2d 1071, 1074 (court not persuaded that landlord required to make premises safe from any hidden defect when victim too young for warning to be effective).

In general, a landlord is not liable for injuries to a tenant caused by a defective condition in premises which are under the tenant's exclusive control. See id. ¶ 12. The plaintiff relies on the Portland Housing Code requirements for dwelling units to raise an issue of fact regarding whether the defendants retained control over the windows for the purposes of landlord/tenant law. Defs.' & Pl.'s SMF, ¶¶ 4, 12. The Portland Housing Code imposes obligations on the owner of a dwelling unit with regard to almost all elements of a dwelling unit. See Portland Housing Code, § 6-108 (minimum standards for foundations, basements, cellars, exterior walls, roofs, interior floors, walls, ceilings, doors, exterior windows, doors, skylights, stairways, stairwells, stair, porches, chimneys, flues, and vent). If the plaintiff is correct, this

2

ordinance effectively places the landlords in control of most of the apartment they leased and essentially abrogates the law of landlord/tenant responsibility. See Rodrigue, 1997 ME 99, ¶¶ 11-13, 694 A.2d at 926-27; see also Hankard v. Beal, 543 A.2d 1376, 1378 (Me. 1988) (possession of land determined by occupancy and intent to control).

In Young v. Libby, the Law Court considered a landlord/tenant case that involved lead paint poisoning. The Portland Housing Authority required an inspection of the condition of each room of the house rented to the plaintiffs from the defendants. The house did not pass inspection because of chipped and peeling paint, which the defendants were required to fix. See Young, 1999 ME 139, ¶ 3, 737 A.2d at 1072. The plaintiffs based their claim on the defendants' failure to disclose a latent defect in the premises under the tenants' exclusive control. There was no discussion regarding the landlords' possession and control resulting from the Portland Housing Authority's requirements. Id. ¶11, 737 A.2d at 1074. Further, as discussed in Young, the Legislature has created a statutory cause of action for a landlord's failure to correct conditions in an apartment. See 14 M.R.S.A. § 6021.

A landlord can be liable under three exceptions to the general rule. Nichols v. Marsden, 483 A.2d 341, 343 (Me. 1984). The plaintiff has failed to raise an issue of fact regarding the defendants' failure to disclose a latent defect. See id. (both parties well aware of poor condition of steps before plaintiff's fall); Defs.' & Pl.'s SMF, ¶¶ 6, 8, 9, 10, 11; Sung Ying Chiu Dep. at 18, 33.

3

The plaintiff has failed to raise an issue of fact regarding the defendants' gratuitously undertaking to repair the window and their negligence in doing so. The record does not support the plaintiff's allegation that defendant Keast "agreed" to fix the windows. See Nichols, 483 A.2d at 343 (defendants did not attempt to repair steps while premises in plaintiff's possession); Pl.'s SMF, ¶ 11; Sio Tong Chiu Dep. at 19-22, 34. Instead, the record shows that Mrs. Chiu "told" and "asked" defendant Keast to inspect and fix windows and wallpaper and that he did not do that. See id. The record supports the assertions that the defendants repaired four things in the apartment and did not repair the window in question. See Defs.' & Pl.'s SMF, ¶ 7.

The plaintiff has failed to raise an issue of fact regarding the defendants expressly agreeing to maintain the premises. The record does not support the plaintiff's allegation that the prior owners expressly agreed to maintain and repair the apartment[1] and that the defendants agreed to that same term. See Nichols, 483 A.2d at 344 (defendants admitted they told plaintiff they would take care of major repair work); Jones v. Chicago Housing Authority, 376 N.E.2d 26, 28 (Ill. App. Ct. 1978) (defendant consistently repaired within days items reported to need repair); Defs.' & Pl.'s SMF, ¶¶ 3-4; Plaintiff's Answers to Interrogatories, # 2-3; but cf. Pl.'s Mem. at 8. The record shows that defendant Keast repaired four things in the

---

[1] In her deposition, Mrs. Chiu testified that when the Russells, prior owners, owned the building, "[i]f there is something wrong in the building, like if something is broken, that goes to the Russells' son, but rent goes to the Russells' daughter." Mrs. Chiu further testified that the Russells' son fixed a sink and a window. See Sio Tong Chiu Dep. at 11; Defs.' & Pl.'s SMF, ¶ 3; Pl.'s Answers to Interrogatories, # 2-3.

4

apartment and did not inspect and fix other things when requested by Mrs. Chiu. See Defs.' & Pl.'s SMF, ¶¶ 7, 11; Saunders v. Picard, 683 A.2d 501, 501-02 (Me. 1996) (citing RESTATEMENT (SECOND) OF PROPERTY § 17.5 cmt. b(1) (1977)).

## LANDOWNER LIABILITY

Because the defendants were not in possession or control of the apartment, the defendants' duty to the plaintiff should be analyzed according to the law governing landlord-tenant relations and not the law governing the duties of a landowner to an invitee. The fact that a landlord is not liable for injuries from a defective condition in premises under the tenant's exclusive control is consistent with the property law theory that a tenant is the possessor of property upon occupancy. See Zillman, Simmons & Gregory, Maine Tort Law § 8.07 at 186 (1999) (citing Nichols v. Marsden, 483 A.2d at 343); Sawyer v. McGillicuddy, 81 Me. 318, 321 (1889); RESTATEMENT (SECOND) OF TORTS § 356 cmt. a (1965).

## IMPLIED WARRANTY OF HABITABILITY

The defendants argue that pursuant to the statute, the plaintiff may not claim personal injury damages arising out of any breach of the implied warranty of habitability. 14 M.R.S.A. § 6021(4)(D) ("The court may not award consequential damages for breach of the warranty of fitness for human habitation."). In count III, as in all counts of the plaintiff's amended complaint, the plaintiff seeks personal injury damages.

The statutory language clearly precludes an award of consequential damages for a breach of the warranty of habitability. Id.; see Rubin v. Josephson, 478 A.2d 665,

671 (Me. 1984) (statute modifying common law); see also Dunelawn Owners' Ass'n v. Gendreau, 2000 ME 94, ¶¶ 3-4, 750 A.2d 591, 593 (damages to real and personal property only claimed under theory of breach of implied warranty of habitability by condominium owner and condominium owners' association)[2].

The entry is

> The Defendants Davis-Keast and Keast's Motion for Summary Judgment is GRANTED on Counts I, II, and III of the Plaintiff's Complaint.

> Judgment is entered in favor of the Defendants Davis-Keast and Keast and against the Plaintiff on Counts I, II, and III of the Plaintiff's Amended Complaint.

Date: March 14, 2001

Nancy Mills
Justice, Superior Court

---

[2]In Dunelawn, the Law Court determined that the breach of warranty of habitability claims accrued when construction was completed or at the time of purchase. See Dunelawn, 2000 ME 94, ¶ 12, 750 A.2d at 595-96. The Court cited cases determining accrual of such claims based on a breach of contract. Id.; see, e.g., Stephens v. Creel, 429 So.2d 278, 280 (Ala. 1983) (breach of warranty of good workmanship).

Date Filed ____11-22-99____ ____CUMBERLAND____ Docket No. CV99-677

County

Action ____PERSONAL INJURY____

THE CITY OF PORTLAND
MARK ADELSON
NANCY K. DAVIS-KEAST (fka
 Nancy Davis)
GEE KEUNG CHIU (aka KENNY CHIU),         MARK KEAST
by his next friend and father,          AMY POWERS          ROSALIE RUSSE~~LL~~
SUNG YING CHIU, and his next friend      TAMMY MUNSON        ~~THEODORE RUSSELL~~
and mother, SIO TONG CHIU   vs.          P. SAMUEL HOFFSES   dismissed 10-2-0C

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| JOHN H. RICH III ESQ 774-2635<br>STEPHEN D. WILSON ESQ<br>PO BOX 426<br>PORTLAND, ME 04112 | ~~PAUL DOUGLASS, ESQ. (R. RUSSELL)~~<br>DEBORAH A. BUCCINA, ESQ. (KEASTS) 774-1<br>PO BOX 7108<br>PORTLAND, ME 04112<br><br>MARK E. DUNLAP, ESQ. (ALL OTHER DEFS)<br>PO BOX 4600<br>PORTLAND, ME 04112     774-7000 |

Date of
Entry

~~ROBERT NEAULT ESQ (Rosalie Russell)~~
~~PO BOX 1575 Naples Me 04055  6933030~~